UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROUND GOLD LLC,

                Plaintiff,

v.

AMERON INTERNATIONAL CORPORATION,

                Defendants.

C07-791Z

ORDER

THIS MATTER comes before the Court on defendant's motion for summary judgment, docket no. 32. Having reviewed all papers filed in support of and in opposition to defendant's motion, the Court hereby DENIES the motion for the reasons set forth in this Order.

**Background**

Plaintiff Round Gold LLC ("Round Gold") alleges breach of express warranty and breach of implied warranties in connection with a paint manufactured by defendant Ameron International Corporation ("Ameron"), which was applied by Puglia Engineering Inc. dba Fairhaven Shipyard to the interior of the holding tanks of the barge ALASKAN VENTURER (the "Vessel"). Round Gold is a Washington limited liability company comprised of two members, Joseph Brotherton and Dan Nelson. *See* Brotherton Decl. at ¶ 1 (docket no. 36); *see also* Complaint at ¶ 1.1 (docket no. 1). Alaska Protein Recovery LLC ("APR") is an

ORDER 1–

Alaska limited liability company comprised of three members, Joseph Brotherton, Dan Nelson, and Sandro Lane. *Id.* Sandro Lane currently serves as chief executive officer of APR. *See* Lane Decl. at ¶ 1 (docket no. 35).

In May 2002, Round Gold purchased the Vessel when it acquired the assets of Cossack Caviar Inc., which had filed for Chapter 11 bankruptcy the previous month. *See* Amy Trask, "Seattle Investors Buy Bankrupt Caviar Firm," *Seattle Times* (May 24, 2002); *see also* "Caviar Maker Acquired Out of Bankruptcy," *Puget Sound Bus. J.* (May 23, 2002). The Vessel was designed to convert fish waste into hydrolysate, which can be used as aquaculture or animal feed or as organic fertilizer. *See* Steve Wilhelm, "Round Gold Has Surplus Fishes and Caviar Dreams," *Puget Sound Bus. J.* (Dec. 27, 2002); *see also* Lane Dep. at 132:10-133:23, Exh. 4 to Karlberg Decl. (docket no. 34). The long-term plan for the Vessel was to produce hydrolysate approved by the FDA for human consumption, *i.e.* "food grade" fish oil. *See* Warren Dep. at 18:11-16, Exh. 1 to Karlberg Decl.

In August 2002, Round Gold contracted with Fairhaven Shipyard to *inter alia* paint the interior of the Vessel's holding tanks. *See* Exh. F to Gabel Decl. (docket no. 33). Round Gold's representative for the project was Brad Warren. *See* Warren Dep. at 10:24-11:2, Exh. D to Gabel Decl. According to Mr. Warren, he met at least three times with Kurt Mensing, a representative of Ameron, and explained to Mr. Mensing the requirements of the paint to be applied to the interior of the Vessel's holding tanks. *See* Warren Dep. at 15-25, 34:7-17, Exh. 1 to Karlberg Decl. In his deposition, Mr. Warren testified that he gave a sample of hydrolysate to Mr. Mensing for testing, *id.* at 16:19-17:2, that Mr. Mensing then selected an appropriate paint, *id.* at 17:15-18, that Mr. Mensing indicated Ameron would provide a written ten-year warranty for the paint conditioned on Mr. Mensing's approval of Fairhaven Shipyard's preparation of the holding tanks prior to application of the paint, *id.* at 19:7-13, that Mr. Mensing inspected the holding tanks after each stage of the preparation, *id.* at 21:4-8, and that Mr. Mensing stated his approval before the paint was applied, but did not

upon request provide the promised warranty, *id.* at 22:10-12, 24:24-25:13, 34:21-23. Mr. Warren estimated that the preparations on which Mr. Mensing conditioned the ten-year warranty were "tens of thousands" of dollars extra, *id.* at 20:2-10, and he had never before been involved in a vessel painting project in which the paint supplier inspected and approved every step of the preparations, *id.* at 21:12-22:2.

Robert Costello of Fairhaven Shipyard has a similar recollection of events. According to Mr. Costello, Ameron, not Fairhaven Shipyard, selected the paint. Costello Dep. at 16:14-15, Exh. 2 to Karlberg Decl. Mr. Mensing dictated to Fairhaven Shipyard the manner in which the holding tanks were to be prepared and the paint applied. *Id.* at 18:11-14, 19:8-18. Mr. Mensing, or someone on behalf of Ameron, inspected and approved of each step of the process. *Id.* at 19:16-18, 23:18-23. Mr. Costello specifically remembers Mr. Mensing saying that Ameron would warrant the paint for ten years, *id.* at 35:21-36:4, 39:8-15, but when Mr. Costello later inquired about the warranty, after the paint had been applied, Mr. Mensing told him over the telephone that the warranty was "on the back of the can," *id.* at 37:23-38:13.

Roger Hegwald, who has since retired from Fairhaven Shipyard, was also present during at least one of the meetings when the ten-year warranty was discussed, and he testified in his deposition as follows:

> Q In your presence, did Mr. Mensing agree that Ameron would give a ten-year warranty on the paint product that he recommended for use in the tanks?
> A Yes, he did.
> Q And did he put conditions on that warranty?
> A The conditions were that he would approve each step of the blasting and paint process.
> Q Were those conditions unusual for the fishing industry, for this type of work?
> . . . .
> A It certainly raised my eyebrows. I had never seen a warranty that long, and others at the shipyard talked about this ten-year warranty. I had seen

ORDER 3–

> vessels come in with ten-year bottom paint. But I've never seen tanks with a ten-year warranty.
>
> Q And typically in commercial fishing vessels, when the yard is doing a paint job on those tanks, does it involve step-by-step inspection and approval by the paint rep?
>
> A No.
>
> Q So is this unusual, then?
>
> A That's unusual, mm-hmm.

Hegwald Dep. at 20:21-21:4, 21:7-16, Exh. 3 to Karlberg Decl.

In contrast, Mr. Mensing stated in his deposition that he did not have authority or discretion to extend or alter the terms of the warranty for Amerlock 2, the paint used in the Vessel's holding tanks. Mensing Dep. at 78:4-7, Exh. 5 to Karlberg Decl. Mr. Mensing further averred that he had never "in 24 years" been asked by a customer, either a shipyard or a vessel owner, to provide other than the standard warranty for Amerlock 2. *Id.* at 78:14-17. Mr. Mensing acknowledged that he was aware the holding tanks were intended to contain product for human consumption, that the product would range in pH from 3 or 4 to 6, and that both Fairhaven Shipyard and Round Gold would rely on his recommendation of Amerlock 2 as the appropriate paint for the Vessel's holding tanks. *Id.* at 110:21-25, 112:23-113:17, 168:23-169:3. Mr. Mensing, however, denied ever discussing a ten-year warranty with Mr. Costello, Mr. Hegwald, and/or Mr. Warren. *Id.* at 120:1-5 ("It did not occur.").

According to Mr. Mensing, the only conversation among the men concerned the standard one-year warranty, *id.* at 114:10-21, and, when he sent a fax to Fairhaven Shipyard in December 2002, indicating that the holding tanks had been "inspected and approved by Ameron," he did not intend for the shipyard to rely on it, *see id.* at 145:11-13 (discussing Mensing Dep. Exh. 4). The fax also stated that a "written Warranty will be provided by Ameron to the Owner, Round Gold LLC." Mensing Dep. Exh. 4, Exh. 5 to Karlberg Decl. When asked in his deposition why he faxed the document, Mr. Mensing explained that it was requested by Mike Morresy of Fairhaven Shipyard, and "the only intent of authoring this was

ORDER 4–

to let them know that, yes, I had seen the tanks after the final coating had been applied." *Id.* at 143:9-13; *see also id.* at 145:14-19 (Ameron's inspection and approval were "not a requirement at all"). The sentence about the warranty meant only that he would provide Round Gold a copy of the standard warranty information. *Id.* at 146:4-11, 148:2-5.

After the painting and other repairs were completed, the Vessel was bare boat chartered by Round Gold to APR. *See* Lane Dep. at 34:25-35:2, Exh. 4 to Karlberg Decl. In March 2004, the Vessel was sold by Round Gold to APR, with APR assuming liability on the $2 million vessel mortgage. *Id.* at 35:6-9; *see also* Lane Decl. at ¶ 7. In May 2004, after emptying the Vessel's holding tanks of all hydrolysate and cleaning them, APR personnel discovered that the interior paint was peeling. *See* Lane Dep. at 68:9-14, 69:22-24. Sandro Lane contacted Betsy McCarthy, Joseph Brotherton's assistant, and asked whether Round Gold had ever received a copy of the ten-year written warranty. *Id.* at 69:4-13. On May 24, 2004, Ms. McCarthy sent a fax to Mr. Mensing requesting "the written Warranty referenced in your fax of 12/11/02." Mensing Dep. Exh. 5, Exh. 5 to Karlberg Decl.

In July 2004, apparently after several inquiries by Ms. McCarthy, *see* Lane Dep. at 76:17-19, Mr. Mensing finally sent a fax to Round Gold containing standard warranty language, limiting a buyer's remedy to replacement of the product or credit for the amount of the defective product. Mensing Dep. Exh. 6, Exh. 5 to Karlberg Decl. The standard warranty requires that any claim be made within five days of discovery of the defect or within one year of the date of delivery of the product, whichever is earlier. *Id.* The standard language also attempts to bar consequential or incidental damages and to repudiate any warranty of merchantability or fitness for a particular purpose. *Id.*

On behalf of APR, Mr. Lane has orally demanded of Round Gold that it repair the interior coating of the Vessel's holding tanks, but APR has not sued Round Gold or assigned any of its claims to Round Gold. *See* Lane Dep. at 97:23-12, 99:22-24; *see also* Lane Decl. at ¶ 8. Round Gold has been financially unable, and/or unwilling in light of the alleged

ORDER  5–

ten-year warranty, to pay for such repainting. *See* Lane Dep. at 206:12-207:15; *see also* Lane Decl. at ¶ 8.

In December 2005, on behalf of Round Gold, attorney Ken Karlberg initiated correspondence with Ameron concerning the "peeling, cracking and bubbling" paint in the Vessel's holding tanks. Exh. 6 to Karlberg Decl. In January 2006, Ameron responded with an offer to provide replacement paint, but not to cover the labor and other costs associated with relining the holding tanks. *Id.* Round Gold filed suit against Ameron on May 23, 2007, alleging that this Court has both diversity and admiralty jurisdiction. *See* Complaint at ¶¶ 2.1.

**Discussion**

**A.     Standard for Summary Judgment**

The Court may grant summary judgment only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the Court must assume the truth of the adversary's affirmative evidence and draw all "justifiable inferences" in favor of the non-moving party. *Id.* at 255, 257.

**B.     Statute of Frauds**

Neither party addresses what law governs in this case or whether the alleged oral warranty is even enforceable. Ameron assumes without discussion that Washington law, and in particular, Article 2 of the Uniform Commercial Code ("UCC"), applies in this matter. Article 2 concerns "transactions in goods." RCW 62A.2-102. "Goods" means "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale." RCW 62A.2-105(1). Thus, the contract for sale of the Amerlock 2

ORDER 6–

paint at issue falls within the ambit of the UCC. It also might constitute a maritime contract, which would be controlled by federal admiralty law. *See Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961) (contract to repair ship is maritime in nature). The Court, however, need not decide which law applies because an already executed oral contract is enforceable under either the UCC or in admiralty. Under Article 2, a writing is required for contracts involving the sale of goods that exceed $500 in price, except that an oral contract is valid and enforceable with respect to goods for which payment has been made and accepted or which have been received and accepted. RCW 62A.2-201(1) & (3)(c). Under maritime law, oral contracts are generally regarded as valid. *Kossick*, 365 U.S. at 734. Here, the Amerlock 2 paint was undisputedly delivered and payment was made, and thus, the alleged oral warranty does not violate any applicable statute of frauds.

## C. Statute of Limitations

Ameron contends that the statute of limitations applicable to Round Gold's claims is four years and runs from the date of delivery of the paint at issue. Ameron's argument is flawed because it completely ignores the basis of Round Gold's claims. Ameron has assumed, and Round Gold has not disputed, that Article 2 of the UCC applies. Under the UCC, an action for breach of a contract for the sale of goods must be commenced within four years after the cause of action has accrued. RCW 62A.2-725(1). A cause of action ordinarily accrues when the breach occurs, but a breach of warranty accrues when tender of delivery is made, unless the warranty extends to future performance of the goods, in which case, the action accrues when the breach is or should have been discovered. RCW 62A.2-725(2). Here, Round Gold alleges that Ameron warranted the paint at issue for a ten-year period and that it discovered the breach in May 2004. Ameron provides no basis for finding that Round Gold should have discovered the breach earlier. Thus, when Round Gold filed suit in May 2007, it did so within the four-year statute of limitations. To the extent Ameron

contends no ten-year warranty was provided, such argument goes to the merits of Round Gold's claims, and not to whether they are barred by the statute of limitations.

**D.   Notice**

Ameron asks the Court to find, as a matter of law, that Round Gold did not provide seasonable notice of the defect in the paint at issue. Ameron's request is baseless. The UCC requires that, after a tender of goods has been accepted, a buyer must "within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." RCW 62A.2-607(3)(a). The time for notification is determined "by applying commercial standards to a merchant buyer," and a "different standard," which is more lenient, for retail consumers. RCW 62A.2-607 cmt. 4. In arguing that the period from May 2004, when Round Gold discovered the breach at issue, to December 2005, when Round Gold's attorney initiated correspondence with Ameron, is per se an unreasonable delay,[1] Ameron fails to provide any evidence of the applicable commercial standards or to address the time requirements in the event Round Gold is considered a retail consumer rather than a merchant buyer. Moreover, whether the period from May 2004 through December 2005 was "reasonable" presents a factual question unsuitable for summary judgment.

**E.   Absence of Damages**

Ameron seeks dismissal of this case on the ground that APR, which is not a party, rather than Round Gold, the named plaintiff, has suffered damages. Ameron contends that, because APR, as current owner of the Vessel, has not made a written claim against Round

---

[1] Ameron assumes that Round Gold's inquiries about the warranty during the period from May through July 2004 did not constitute notice of breach. Because Round Gold is the non-moving party, however, all reasonable inferences must be drawn in its favor, and the earlier communications between Round Gold and Ameron might qualify as adequate notice. *See* RCW 62A.2-607 cmt. 4 ("The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. . . . The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation."). Moreover, Joseph Brotherton indicated in a letter dated August 9, 2004, to Fairhaven Shipyard that "[t]he paint applied to tanks by your company is failing at a disturbing rate." Exh. H to Gabel Decl. Whether Fairhaven Shipyard forwarded this correspondence to Ameron remains unclear.

ORDER 8–

Gold, Round Gold cannot prove any damages.[2] Ameron's argument elevates form over substance. Round Gold and APR have common ownership; Joseph Brotherton and Dan Nelson are members in both limited liability companies, while Sandro Lane has only a one-third share of APR. Whatever losses APR incurs, the members of Round Gold suffer in like kind. Moreover, Sandro Lane, as the only member of APR not also a member of Round Gold, has made repeated oral demands of Round Gold to effect repairs of the Vessel. Ameron provides no basis for requiring that Mr. Lane make such claims in writing.

### F. **Limitation of Damages / Privity**

Ameron contends that it was not in privity with Round Gold, that Round Gold was merely a third-party beneficiary to the contract between Ameron and Fairhaven Shipyard, and that the one-year warranty extended to Fairhaven Shipyard, as to which Round Gold is allegedly now bound, was limited to replacement of (or refund for) the product and expressly precluded consequential and incidental damages.[3] Ameron's assertion again ignores Round Gold's claims. Round Gold alleges that it directly contracted with and was given a ten-year warranty by Ameron.[4] Whether such ten-year warranty was provided or promised

---

[2] Ameron also suggests that APR could have, but did not, assign its rights to Round Gold; however, such assignment (effectively a subrogation) would not have defeated Ameron's challenge. Round Gold would merely have stood in the shoes of APR, taking only such rights as APR had. *See Grange Ins. Ass'n v. Ryder Truck Rental, Inc.*, 2006 WL 810669 (Wash. Ct. App. 2006) ("The assignee stands in the shoes of the assignor and acquires no more rights than the assignee had to transfer." (citing *Int'l Commerical Collectors, Inc. v. Mazel Co.*, 48 Wn. App. 712, 740 P.2d 363 (1987))). Had APR executed the proposed assignment, Ameron would likely now be arguing that Round Gold has no claim because it assumed only what APR had and APR lacked privity with Ameron.

[3] Ameron does not address the issue whether the exclusive or limited remedy in such standard one-year warranty failed of its essential purpose and was therefore unenforceable. *See* RCW 62A.2-719 (2) ("Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Title."); *see also Milgard Tempering, Inc. v. Selas Corp.*, 761 F.2d 553 (9th Cir. 1985). Thus, even if the Court were persuaded that the one-year warranty governs in this matter, Ameron has not made an adequate showing that it is entitled to summary judgment as to consequential or incidental damages.

[4] Even if the contract for sale of the paint was technically between Ameron and Fairhaven Shipyard, privity requirements could be satisfied under Washington law by evidence that Ameron made express representations to Round Gold. *See Tex Enters., Inc. v. Brockway Std., Inc.*, 149 Wn.2d 204, 213, 66 P.3d 625 (2003) ("[T]his court has already clearly established that the privity requirement is relaxed where a

ORDER 9–

constitutes a genuine issue of material fact. If the ten-year warranty is proven, Round Gold will be entitled to consequential and incidental damages. *See* RCW 62A.2-714(3); *see also* RCW 62A.2-715; RCW 62A.2-719 (limitations on a buyer's remedies must be explicitly stated in the agreement between the parties).

**Conclusion**

For all of the foregoing reasons, the Court DENIES Ameron's motion for summary judgment, docket no. 32.

IT IS SO ORDERED.

DATED this 7th day of August, 2008.

*Thomas S. Zilly*
Thomas S. Zilly
United States District Judge

---

manufacturer makes express representations to a plaintiff." (citing *Baughn v. Honda Motor Co.*, 107 Wn.2d 127, 727 P.2d 655 (1986))).

ORDER   10–